1

**CUSTODIO & DUBEY, LLP**
Robert Abiri (SBN 238681)
445 S. Figueroa Street, Suite 2520
Los Angeles, CA 90071
Telephone: (213) 593-9095
Facsimile: (213) 785-2899
E-mail: abiri@cd-lawyers.com

**THE WAND LAW FIRM, P.C.**
Aubry Wand (SBN 281207)
400 Corporate Pointe, Suite 300
Culver City, California 90230
Telephone: (310) 590-4503
Facsimile: (310) 590-4596
E-mail: awand@wandlawfirm.com

*Attorneys for Plaintiff and the Putative
Classes*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

MICHAEL MERABI, on behalf of
himself and all others similarly situated,

            Plaintiff,

    v.

HARD EIGHT NUTRITION LLC, a
limited liability company; and DOES 1
through 10, inclusive,

            Defendants.

CASE NO.: 2:21-cv-06753

## CLASS ACTION COMPLAINT

1. Violation of California Consumer
   Legal Remedies Act
2. Violation of California False
   Advertising Law
3. Violation of California Unfair
   Competition Law
4. Breach of Express Warranty
5. Breach of Implied Warranty
6. Intentional Misrepresentation
7. Negligent Misrepresentation
8. Unjust Enrichment
9. Violation of Magnuson-Moss
   Warranty Act

### DEMAND FOR JURY TRIAL

Plaintiff Michael Merabi ("Plaintiff"), on behalf of himself and all others similarly situated, brings this class action against Defendant Hard Eight Nutrition LLC and Does 1 through 10 ("Defendant") based on Defendant's false and deceptive advertising and labeling of its supplements. Plaintiff makes the following allegations based on the investigation of his counsel, and on information and belief, except as to allegations pertaining to Plaintiff individually, which are based on his personal knowledge.

## **INTRODUCTION**

1.     This case is predicated on a systemic course of false, misleading, and unlawful conduct: Defendant has grossly exaggerated the number of servings that its supplements can make in order to induce consumer purchases and to charge more for these supplements.

2.     Throughout the statute of limitations period, Defendant has sold its supplements to consumers based on the representation that they contain enough ingredients to make a specific number of servings. However, pursuant to Defendant's own instructions, the supplements do not contain nearly enough ingredients to make the number of servings represented. In fact, they can make, on average, just 53.85% of the servings represented.

3.     Plaintiff and other consumers purchased Defendant's supplements based on the reasonable belief, derived from Defendant's own representation made on the packaging itself, that these supplements contained enough ingredients to make the specified number of servings. Had Plaintiff and other consumers known the truth (i.e., that the supplements do not contain enough ingredients to make the specified number of servings), they would not have purchased them or they would have paid less for them (i.e., they have paid a price premium as a result of the deceptive serving representation). Thus, Plaintiff and other consumers have been deceived and have suffered economic injury.

4.      Plaintiff seeks relief in this action individually, and on behalf of all other similarly situated individuals who purchased Defendant's falsely and deceptively labeled supplements during the statute of limitations period, for violations of California's Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, and for breach of express and implied warranty, intentional and negligent misrepresentation, unjust enrichment, and for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action filed under Rule 23 of the Federal Rules of Civil Procedure, there are thousands of proposed Class members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and Defendant is a citizen of a state different from at least some members of the proposed Class, including Plaintiff.

6.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts in California, or otherwise intentionally avails itself of the markets within California, through its sale of the goods and products in California and to California consumers.

7.      Venue is proper in this judicial District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. Plaintiff resides in this District and he purchased one of the Products in this District.

## THE PARTIES

8.      Plaintiff is a citizen of the United States and the State of California and he currently resides in Los Angeles County. On or about May 17, 2021, Plaintiff purchased Defendant's Potassium Chloride 100g supplement, for which he paid

-2-

approximately $17.96. In purchasing this product, Plaintiff saw and relied on Defendant's representations made on the packaging. Specifically, Plaintiff reasonably believed that the Potassium Chloride 100g supplement contained enough ingredients to make 500 servings because he saw and relied on the representation "**Servings per container**: 500" (emphasis in original) prominently printed on the packaging. Plaintiff's reasonable belief that the Potassium Chloride supplement he purchased could make 500 servings, as expressly represented, was an important factor in his decision to purchase it. Plaintiff would not have purchased the Potassium Chloride supplement, or he would have paid less for it (i.e., he paid a price premium), but for the deceptive serving representation. Therefore, Plaintiff suffered injury in fact and lost money as a result of Defendant's misleading, false, unfair, and deceptive practices, as described herein.

9.      Plaintiff would like to continue purchasing Defendant's supplements in the future. However, because of the deceptive representations, Plaintiff cannot trust Defendant's serving size representations. In particular, if Plaintiff were to purchase one of Defendant's supplements, such as the Potassium Chloride supplement, he currently believes that it would not be able to make nearly the number of servings represented if he followed Defendant's instructions. As a direct result of Plaintiff's inability to rely on Defendant's advertising or labeling in the future, Plaintiff will not purchase Defendant's products, even though he would like to do so. This is a tangible and ongoing harm. In addition, Class members will continue purchasing Defendant's supplements, reasonably but incorrectly believing that they contain enough product to make the advertised number of servings. Thus, there is also a continuing risk of harm to the Class.

10.      Defendant is a Nevada limited liability company with its principal place of business in Las Vegas, Nevada. Defendant, which does business as BulkSupplements.com, produces and distributes consumer supplements, some of

which are at issue in this case. As such, Defendant is responsible for the labeling, marketing, sale, distribution, and unlawful conduct alleged herein.

11.     The true names and capacities of DOES 1 through 10, inclusive, are unknown to Plaintiff at this time, and Plaintiff therefore sues such DOE defendants under fictitious names. Upon information and belief, each Defendant designated as a DOE is in some manner highly responsible for the occurrences alleged herein, and Plaintiff and Class members' injuries and damages, as alleged herein, were proximately caused by the conduct of such DOE defendants. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of such DOE defendants when ascertained.

## FACTUAL ALLEGATIONS

**A.     The Products at Issue**

12.     The products at issue include but are not limited to Defendant's Potassium Chloride, Creatine Monohydrate ("Creatine"), L-Citrulline DL-Malate 2:1, Beta Alanine, L-Citrulline, Ascorbic Acid (Vitamin C), Taurine, Methylsulfonylmethane ("MSM"), and L-Arginine supplements (hereinafter referred to as the "Product(s)").

13.     The Products are sold across the United States primarily through Defendant's e-commerce website (www.bulksupplements.com), as well as through third-party retailers.

**B.     Defendant Grossly Overstates the Number of Servings the Products Can Make**

14.     Defendant represents on the packaging of each of the Products that they contain enough ingredients to make a specified number of servings. These serving representations are grossly exaggerated and likely to mislead reasonable consumers into believing the Products can make significantly more servings than they actually can.

15.     Images of the some of the Products' packaging are depicted below:

**Figure 1.a: Potassium Chloride 100 g**



**Figure 1.b: Potassium Chloride 100 g**

CLASS ACTION COMPLAINT

1

**Figure 2: Creatine 100 g**

2

3

4

5

6

7

8

9

10

11

12

13

14



**Figure 3: L-Citrulline DL-Malate 2:1 100 g**

15

16

17

18

19

20

21

22

23

24

25

26

27

28





CLASS ACTION COMPLAINT

**Figure 4: Beta Alanine 100 g**



**Figure 5: L-Citrulline 100 g**



**Figure 6: Ascorbic Acid (Vitamin C) 100 g**



**Figure 7: Taurine 100 g**

**Figure 8: MSM 100 g**



**Figure 9: L-Arginine 100 g**



CLASS ACTION COMPLAINT

16.     Defendant states on the packaging of the Potassium Chloride 100g supplement: "**Servings per container**: 500". The packaging instructs consumers to "take 200 mg (about 1/10) once daily". *See* Figure 1.a.

17.     None of the Products come with scoopers or measuring spoons. Reasonable consumers understand a teaspoon to be the unit of measurement based on how consumers take supplements. On the same webpage of Defendant's e-commerce website, immediately below images of the Potassium Chloride supplement, it also confirms that the teaspoon is the unit of measurement—i.e., Defendant's instructions are to take 1/10 of a teaspoon. *See* Figure 1.b. Moreover, the only other plausible unit of measurement would be a tablespoon, and if a consumer were to use a tablespoon, he or she would get one-third *fewer* servings (one tablespoon equals three teaspoons).

18.     One teaspoon of the Potassium Chloride supplement weighs approximately 5.69 grams. In turn, 1/10 of 5.69 grams is 569 milligrams. The actual serving size is 200 milligrams.[1] 200 milligrams / 569 milligrams = 35.15%. In other words, a consumer following Defendant's serving instructions will only be able to make 35.15% of the servings represented on the packaging.

19.     The same shortfall is reached by comparing the aggregate servings of the Potassium Chloride supplement. In order to make 500 servings, there would need to be 284,500 milligrams [569 milligrams x 500 servings]. However, there are only 100,000 milligrams in the 100 g package. This also yields just 35.15% [100,000 milligrams / 284,500 milligrams].

---

[1] Consumers can reasonably expect to take supplements in the serving amounts as represented on the packaging. A consumer derives no value from taking unnecessary and excessive amounts of product per serving. While this case does not involve any claims for personal injury, increased serving sizes could have negative value, as excessive amounts of the supplements at issue here can even be dangerous.

20.     In sum, if a consumer reasonably follows Defendant's instructions, the Product will yield 175.75 servings, which is equivalent to just 35.15% of the represented number of servings. Defendant's representation that the Potassium Chloride 100g supplement makes 500 servings is therefore false, deceptive, and misleading.

21.     The same deceptive serving representations apply to the other Products as set forth below.

22.     The Creatine supplement states that one serving is "about 2 tsp". *See* Figure 2. In turn, two teaspoons of Creatine are approximately 8.50 grams. The actual serving size is 5 grams. 5 grams / 8.50 grams = 58.82%. Thus, a consumer following Defendant's serving instructions will only be able to make 58.82% of the servings represented on the packaging of the Creatine supplement.

23.     The L-Citrulline DL-Malate 2:1 supplement states that one serving is "about 1 ¼ tsp". *See* Figure 3. In turn, one and one-quarter teaspoon of L-Citrulline DL-Malate is 5.6 grams. The actual serving size is 3 grams. 3 grams / 5.6 grams = 53.57%. Thus, a consumer following Defendant's serving instructions will only be able to make 53.57% of the servings represented on the packaging of the L-Citrulline DL-Malate 2:1 supplement.

24.     The Beta Alanine supplement states that one serving constitutes "about 1/4 tsp". *See* Figure 4. In turn, one-quarter teaspoon of Beta Alanine is 1.4 grams (1400 milligrams). The actual serving size is 0.6 grams, or 600 milligrams. 600 milligrams / 1400 milligrams = 42.86%. Thus, a consumer following Defendant's serving instructions will only be able to make 42.86% of the servings represented on the packaging of the Beta Alanine supplement.

25.     The L-Citrulline supplement states that one serving constitutes "about 1/2 tbsp". *See* Figure 5. In turn, half of one tablespoon of L-Citrulline is 5.80 grams. The actual serving size is 3 grams. 3 grams / 5.80 milligrams = 51.72%. Thus, a

CLASS ACTION COMPLAINT

consumer following Defendant's serving instructions will only be able to make 51.72% of the servings represented on the packaging of the L-Citrulline supplement.

26.    The Ascorbic Acid (Vitamin C) supplement states that one serving constitutes "1/6 tsp". *See* Figure 6. In turn, one-sixth teaspoon of Ascorbic Acid (Vit C) is 0.75 grams (750 milligrams). The actual serving size is 1.07 grams, or 1070 milligrams. 750 milligrams / 1070 milligrams = 70.09%. Thus, a consumer following Defendant's serving instructions will only be able to make 70.09% of the servings represented on the packaging of the Ascorbic Acid (Vit C) supplement.

27.    The Taurine supplement states that one serving constitutes "rounded 1/8 tsp". *See* Figure 7. In turn, a rounded one-eighth teaspoon of Taurine is 1.10 grams (1100 milligrams). The actual serving size is 0.5 grams, or 500 milligrams. 500 milligrams / 1100 milligrams = 45.45%. Thus, a consumer following Defendant's serving instructions will only be able to make 45.45% of the servings represented on the packaging of the Taurine supplement.

28.    The MSM supplement states that one serving constitutes "about 1/2 tsp". *See* Figure 8. In turn, half of one teaspoon of MSM is 2.70 grams (2700 milligrams). The actual serving size is 1.50 grams, or 1500 milligrams. 1500 milligrams / 2700 milligrams = 55.56%. Thus, a consumer following Defendant's serving instructions will only be able to make 55.56% of the servings represented on the packaging of the MSM supplement.

29.    The L-Arginine supplement states that one serving constitutes "about 1/3 tsp". *See* Figure 9. In turn, one-third teaspoon of L-Arginine is 1.40 grams (1400 milligrams). The actual serving size is 1.00 grams, or 1400 milligrams. 1000 milligrams / 1400 milligrams = 71.43%. Thus, a consumer following Defendant's serving instructions will only be able to make 71.43% of the servings represented on the packaging of the L-Arginine supplement.

30.    Defendant places a materially identical representation on the packaging of all the Products, although the number of represented servings of course varies

-12-

based on the package size (e.g., 250g, 500g, 1kg, 5kg). Calculations by Product and size are set forth in the following chart:

| Product | Net Weight | Servings Represented | Servings Yielded | Percentage Servings Yielded |
|---|---|---|---|---|
| Potassium Chloride | 100 g | 500 | 176 | 35.15% |
| Potassium Chloride | 250 g | 1250 | 439 | 35.15% |
| Potassium Chloride | 500 g | 2500 | 879 | 35.15% |
| Potassium Chloride | 1 kg | 5000 | 1758 | 35.15% |
| Creatine | 100 g | 20 | 12 | 58.82% |
| Creatine | 250 g | 50 | 29 | 58.82% |
| Creatine | 500 g | 100 | 59 | 58.82% |
| Creatine | 1 kg | 200 | 118 | 58.82% |
| L-Citrulline DL-Malate 2:1 | 100 g | 33 | 18 | 53.57% |
| L-Citrulline DL-Malate 2:1 | 250 g | 83 | 44 | 53.57% |
| L-Citrulline DL-Malate 2:1 | 500 g | 167 | 89 | 53.57% |
| L-Citrulline DL-Malate 2:1 | 1 kg | 333 | 178 | 53.57% |
| Beta Alanine | 100 g | 167 | 72 | 42.86% |
| Beta Alanine | 250 g | 417 | 179 | 42.86% |
| Beta Alanine | 500 g | 833 | 357 | 42.86% |
| Beta Alanine | 1 kg | 1667 | 714 | 42.86% |
| L-Citrulline | 100 g | 33 | 17 | 51.72% |
| L-Citrulline | 250 g | 83 | 43 | 51.72% |
| L-Citrulline | 500 g | 167 | 86 | 51.72% |
| L-Citrulline | 1 kg | 333 | 172 | 51.72% |
| Ascorbic Acid (Vitamin C) | 100 g | 133 | 93 | 70.09% |
| Ascorbic Acid (Vitamin C) | 250 g | 333 | 233 | 70.09% |
| Ascorbic Acid (Vitamin C) | 500 g | 667 | 468 | 70.09% |
| Ascorbic Acid (Vitamin C) | 1 kg | 1333 | 934 | 70.09% |
| Taurine | 100 g | 200 | 91 | 45.45% |
| Taurine | 250 g | 500 | 227 | 45.45% |
| Taurine | 500 g | 1000 | 455 | 45.45% |
| Taurine | 1 kg | 2000 | 909 | 45.45% |
| MSM | 100 g | 67 | 37 | 55.56% |
| MSM | 250 g | 167 | 93 | 55.56% |
| MSM | 500 g | 333 | 185 | 55.56% |

| MSM | 1 kg | 667 | 371 | 55.56% |
| L-Arginine | 100 g | 100 | 71 | 71.43% |
| L-Arginine | 250 g | 250 | 179 | 71.43% |
| L-Arginine | 500 g | 500 | 357 | 71.43% |
| L-Arginine | 1 kg | 1000 | 714 | 71.43% |

31.    As evident from the chart above, each and every one of the Products contains substantially less ingredients than needed to make the recommended number of servings promised on the packaging. On average, there is a shortfall of 53.85%, revealing a systematic course of unlawful conduct by Defendant to deceive and shortchange consumers.

## C.    The False and Deceptive Serving Size Representation Harms Consumers

32.    Plaintiff and other consumers purchased the Products relying on Defendant's serving size representations on the Products' packaging.

33.    Plaintiff's and consumers' reasonable belief that the Products are able to make the represented number of servings was a significant factor in each of their decisions to purchase the Products.

34.    Plaintiff and Class members did not know, and had no reason to know, that the Products' labeling vastly overstates the number of servings they are able to make. At the time of purchase, a reasonable consumer cannot measure or calculate how many servings the Products can make. Nor are reasonable consumers expected to keep track of the precise number of servings—particularly over a period of time.

35.    As the entity responsible for the development, manufacturing, packaging, advertising, distribution and sale of the Products, Defendant knew or should have known that each of the Products falsely and deceptively overstates the number of servings that can be made.

36.    Defendant also knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendant's serving size representations. Nonetheless, Defendant deceptively advertises the Products in order

to deceive consumers into believing they are getting considerably more of the Product than they are paying for.

37.     Consumers are willing to pay more for the Products based on the belief that the Products contain enough ingredients to make the represented number of servings. Plaintiff and other consumers would have paid significantly less for the Products (i.e., they paid a price premium), or would not have purchased them at all, had they known that they were getting fewer servings than what they were promised.

38.     By analogy, if a consumer purchased a six-pack of soda, but only received three cans of soda, he would only be receiving 50% of what he paid for. The situation here is no different in terms of financial harm to the consumer. The only difference is that, due to the nature of the Products, Defendant is able to conceal the gross shortfall because reasonable consumers do not keep track of the number of servings they can make over a period of time.

39.     Therefore, Plaintiff and other consumers purchasing the Products have suffered injury in fact and lost money as a result of Defendant's false and deceptive practices, as described herein.

## **CLASS ACTION ALLEGATIONS**

40.     Plaintiff brings this class action pursuant to Fed. R. Civ. P 23 and all other applicable laws and rules, individually, and on behalf of all members of the following Classes:

**Nationwide Class**

All persons who purchased any of the Products in the United States within the applicable statute of limitations period.

**California Subclass**

All persons who purchased any of the Products in the state of California within the applicable statute of limitations period.

**California Consumer Subclass**

> All persons who purchased any of the Products in the state of California, for personal, family, or household purposes, within the applicable statute of limitations period.

41. Excluded from the Classes are the following individuals and/or entities: Defendant and its parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

42. Plaintiff reserves the right to modify or amend the definition of the proposed Classes and/or add subclasses before the Court determines whether certification is appropriate.

43. Plaintiff is a member of the Nationwide Class, the California Subclass, and the California Consumer Subclass.

44. <u>Numerosity:</u> The proposed Classes are so numerous that joinder of all members would be impractical. The Products are sold throughout the United States and the State of California. The number of individuals who purchased the Products during the relevant time period is at least in the thousands. Accordingly, Class members are so numerous that their individual joinder herein is impractical. While the precise number of Class members and their identities are unknown to Plaintiff at this time, these Class members are identifiable and ascertainable.

45. <u>Common Questions Predominate:</u> There are questions of law and fact common to the proposed Classes that will drive the resolution of this action and will predominate over questions affecting only individual Class members. These questions include, but are not limited to, the following:

a. Whether Defendant misrepresented material facts and/or failed to disclose material facts in connection with the packaging, marketing, distribution, and sale of the Products;

b. Whether Defendant's use of false or deceptive packaging and advertising constituted false or deceptive advertising;

c. Whether Defendant engaged in unfair, unlawful and/or fraudulent business practices;

d. Whether Defendant's unlawful conduct, as alleged herein, was intentional and knowing;

e. Whether Plaintiff and the Classes are entitled to damages and/or restitution, and in what amount;

f. Whether Defendant is likely to continue using false, misleading or unlawful conduct such that an injunction is necessary; and

g. Whether Plaintiff and the Classes are entitled to an award of reasonable attorneys' fees, interest, and costs of suit.

46. Defendant has engaged in a common course of conduct giving rise to violations of the legal rights sought to be enforced uniformly by Plaintiff and Class members. Similar or identical statutory and common law violations, business practices, and injuries are involved. The injuries sustained by members of the proposed Classes flow, in each instance, from a common nucleus of operative fact, namely, Defendant's deceptive packaging and advertising of the Products. Each instance of harm suffered by Plaintiff and Class members has directly resulted from a single course of illegal conduct. Each Class member has been exposed to the same deceptive practice, as each of the Products: (a) bear the materially same serving amount representations, and (b) do not contain enough ingredients to make anywhere close to the represented serving amount. Therefore, individual questions, if any, pale in comparison to the numerous common questions presented in this action.

CLASS ACTION COMPLAINT

47.   <u>Superiority</u>: Because of the relatively small amount of damages at issue for each individual Class member, no Class member could afford to seek legal redress on an individual basis. Furthermore, individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also presents a potential for inconsistent or contradictory judgments. A class action is superior to any alternative means of prosecution.

48.   <u>Typicality</u>: The representative Plaintiff's claims are typical of those of the proposed Classes, as all members of the proposed Classes are similarly affected by Defendant's uniform unlawful conduct as alleged herein.

49.   <u>Adequacy</u>: Plaintiff will fairly and adequately protect the interests of the proposed Classes as his interests do not conflict with the interests of the members of the proposed Classes he seeks to represent, and he has retained counsel competent and experienced in class action litigation. The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and counsel.

50.   Defendant has also acted, or failed to act, on grounds generally applicable to Plaintiff and the proposed Classes, supporting the imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

**FIRST CLAIM FOR RELIEF**
**Violation of California's Consumers Legal Remedies Act**
**California Civil Code § 1750, *et seq*.**
**(*For the California Consumer Subclass*)**

51.   Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

52.   Plaintiff brings this claim individually and on behalf of the members of the proposed California Consumer Subclass against Defendant pursuant to California's Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq*.

53.    The Products are "goods" within the meaning of Cal. Civ. Code § 1761(a), and the purchases of such Products by Plaintiff and members of the California Consumer Subclass constitute "transactions" within the meaning of Cal. Civ. Code § 1761(e).

54.    Cal. Civ. Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have . . . ." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products have characteristics (i.e., contain enough ingredients to make a specified number of servings) that they do not have. Therefore, Defendant has violated section 1770(a)(5) of the CLRA.

55.    Cal. Civ. Code § 1770(a)(7) prohibits "[r]espresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." By marketing the Products with their current packaging, Defendant has represented and continues to represent that the Products are of a particular standard (i.e., contain enough ingredients to make a certain number of servings) which they do not possess. Therefore, Defendant has violated section 1770(a)(7) of the CLRA.

56.    Cal. Civ. Code § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." By marketing the Products as containing enough ingredients to make a specified number of servings, but not intending to sell the Products as such Defendant has violated section 1770(a)(9) of the CLRA.

57.    At all relevant times, Defendant has known or reasonably should have known that the Products did not and do not contain enough ingredients to make the represented number of servings, and that Plaintiff and other members of the California Consumer Subclass would reasonably and justifiably rely on the packaging in purchasing the Products.

58.     Plaintiff and members of the California Consumer Subclass have justifiably relied on Defendant's misleading representations when purchasing the Products. Moreover, based on the materiality of Defendant's misleading and deceptive conduct, reliance may be presumed or inferred for Plaintiff and members of California Consumer Subclass.

59.     Plaintiff and members of the California Consumer Subclass have suffered and continue to suffer injuries caused by Defendant because they would have paid significantly less for the Products, or would not have purchased them at all, had they known that the Products contain a substantially deficient amount of ingredients to make the promised number of servings.

60.     In accordance with Cal. Civ. Code § 1780(d), Plaintiff is filing a declaration of venue, attached hereto as Exhibit A to this Complaint.

61.     On May 20, 2021, Plaintiff sent a notice letter by certified mail to Defendant of his intent to pursue claims under, *inter alia*, the CLRA, and an opportunity to cure, consistent with Cal. Civ. Code § 1782. Defendant received this notice and demand letter on or about May 24, 2021.

62.     Because Defendant has failed to fully rectify or remedy the damages caused after waiting more than the statutorily required 30 days after it received the foregoing notice and demand letters, Plaintiff is timely filing this Complaint for damages as permitted under Cal. Civ. Code § 1782(d).

63.     Plaintiff requests that this Court enjoin Defendant from continuing to violate the CLRA as discussed herein and/or from violating the CLRA in the future and to order restitution to Plaintiff and the Class. Plaintiff also requests an award of actual and punitive damages, attorneys' fees and costs, and any other relief that the Court deems proper, pursuant to California Civil Code § 1780(a).

///

///

///

## SECOND CLAIM FOR RELIEF
### Violation of California's False Advertising Law
### California Business & Professions Code § 17500, *et seq*
#### (*For the California Subclass and California Consumer Subclass*)

64.     Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

65.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant pursuant to California's False Adverting Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*

66.     The FAL makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500.

67.     Defendant has represented and continues to represent to the public, including Plaintiff and members of both Classes, through its deceptive packaging, that the Products contain enough ingredients to make substantially more servings than they can actually make. Because Defendant has disseminated misleading information regarding the Products, and Defendant knows, knew, or should have known through the exercise of reasonable care that the representations were and continue to be misleading, Defendant has violated the FAL.

68.     As a result of Defendant's false advertising, Defendant has and continues to unlawfully obtain money from Plaintiff and members of both Classes.

69.     Plaintiff requests that this Court cause Defendant to restore this fraudulently obtained money to him and members of both Classes, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from

-21-

violating the FAL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of both Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law ("UCL"),**
**California Business & Professions Code § 17200, *et seq.***
**(*For the California Subclass and California Consumer Subclass*)**

70.     Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

71.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

72.     The UCL, Cal. Bus. & Prof Code § 17200, provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising . . . ."

73.     Under the UCL, a business act or practice is "unlawful" if it violates any established state or federal law. Defendant's false and misleading advertising of the Products was and continues to be "unlawful" because it violates the CLRA, the FAL, and other applicable laws as described herein. As a result of Defendant's unlawful business acts and practices, Defendant has unlawfully obtained money from Plaintiff, and members of the Classes.

74.     Under the UCL, a business act or practice is "unfair" if the Defendant's conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the benefits for committing such acts or practices are outweighed by the gravity of the harm to the alleged victims. Defendant's conduct was and continues to be of no benefit to purchasers of the Products, as it is misleading, unfair, unlawful, and is injurious to consumers who rely on the packaging. Deceiving consumers as to how many servings the Products can make is of no benefit to consumers. Therefore, Defendant's conduct was and

-22-

continues to be "unfair." As a result of Defendant's unfair business acts and practices, Defendant has and continues to unfairly obtain money from Plaintiff, and members of both Classes.

75.     Under the UCL, a business act or practice is "fraudulent" if it actually deceives or is likely to deceive members of the consuming public. Defendant's conduct here was and continues to be fraudulent because it has the effect of deceiving consumers into believing that the Products contain enough ingredients to make substantially more servings than they can actually make. Because Defendant misled Plaintiff and members of both Classes, Defendant's conduct was "fraudulent." As a result of Defendant's fraudulent business acts and practices, Defendant has and continues to fraudulently obtain money from Plaintiff and members of both Classes.

76.     Plaintiff requests that this Court cause Defendant to restore this unlawfully, unfairly, and fraudulently obtained money to him, and members of both Classes, to disgorge the profits Defendant made on these transactions, and to enjoin Defendant from violating the UCL or violating it in the same fashion in the future as discussed herein. Otherwise, Plaintiff and members of both Classes may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

**FOURTH CLAIM FOR RELIEF**
**Breach of Express Warranty**
(*For the California Subclass and California Consumer Subclass*)

77.     Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

78.     Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

79.     California's express warranty statute provides that "(a) Any affirmation

-23-

of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Cal. Com. Code § 2313.

80.   Defendant has expressly warranted on the Products' packaging that they can make a specific number of servings. For example, Defendant expressly states on the packaging of the 100 g Potassium Chloride supplement: "**Servings per container**: 500". However, as alleged herein, this express representation is patently false, as this Product can only make 175.75 servings, or 35.15% of the servings promised by Defendant. All of the other varieties and sizes of the Products contain materially identical express representations that are false.

81.   These representations about the Products: (a) are affirmations of fact or promises made by Defendant to consumers that the Products contain enough ingredients to make a specific number of servings; (b) became part of the basis of the bargain to purchase the Products when Plaintiff and other consumers relied on the representation; and (c) created an express warranty that the Products would conform to the affirmations of fact or promises. In the alternative, the representations about the Products are descriptions of goods which were made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the product description.

82.   Plaintiff and members of the Classes reasonably and justifiably relied on the foregoing express warranties, believing that the Products did in fact conform to those warranties.

83.   Defendant has breached the express warranties made to Plaintiff and members of the Classes by failing to manufacture the Products with enough ingredients to make the specific number of servings that were expressly warranted on the packaging.

84.    Plaintiff and members of the Classes paid a premium price for the Products but did not obtain the full value of the Products as represented. If Plaintiff and members of the Classes had known of the true nature of the Products, they would not have been willing to pay the premium price associated with the Products.

85.    As a result, Plaintiff and members of the Classes suffered injury and deserve to recover all damages afforded under the law.

86.    Within a reasonable amount of time after Plaintiff discovered that Defendant did in fact breach the express warranty, Plaintiff notified Defendant of the breach.

**FIFTH CLAIM FOR RELIEF**
**Breach of Implied Warranty**
(*For the California Subclass and California Consumer Subclass*)

87.    Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

88.    Plaintiff brings this claim individually and on behalf of the members of the proposed California Subclass and California Consumer Subclass against Defendant.

89.    California's implied warranty of merchantability statute provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. Com. Code § 2314(1).

90.    California's implied warranty of merchantability statute also provides that "[g]oods to be merchantable must be at least such as . . . (f) conform to the promises or affirmations of fact made on the container or label if any." Cal. Com. Code § 2314(2)(f).

91.    Defendant is a merchant with respect to the sale of Products. Therefore, a warranty of merchantability is implied in every contract for sale of the Products to California consumers.

92.     By advertising the Products with their current packaging, Defendant made an implied promise that the Products contain enough ingredients to make a specific number of servings. The Products have not "conformed to the promises…made on the container or label" because they do not contain enough ingredients to make the specific number of servings. Plaintiff, as well as California consumers, did not receive the goods as impliedly warranted by Defendant to be merchantable.

93.     Therefore, the Products are not merchantable under California law and Defendant has breached its implied warranty of merchantability in regard to the Products.

94.     If Plaintiff and members of the Classes had known that the Products could not make as many servings as represented, they would not have been willing to pay the premium price associated with them. Therefore, as a direct and/or indirect result of Defendant's breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

## SIXTH CLAIM FOR RELIEF
### Intentional Misrepresentation
### (*for the Classes*)

95.     Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

96.     Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

97.     Defendant marketed the Products in a manner indicating that they contain enough ingredients to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendant has made misrepresentations about the Products.

98.     Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is receiving and paying for. A reasonable consumer would attach importance to such

-26-

representations and would be induced to act thereon in making purchase decisions.

99.   At all relevant times when such misrepresentations were made, Defendant knew that the representations were misleading, or have acted recklessly in making the representations, without regard to the truth.

100.   Defendant intends that Plaintiff and other consumers rely on these representations, as evidenced by Defendant intentionally and conspicuously placing the misleading representations on the Products' packaging.

101.   Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's intentional misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

102.   Therefore, as a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## SEVENTH CLAIM FOR RELIEF
### Negligent Misrepresentation
#### (for the Classes)

103.   Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

104.   Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

105.   Defendant marketed the Products in a manner indicating that they contain enough ingredients to make a specific number of servings. However, the Products cannot make anywhere close to the represented number of servings. Therefore, Defendant has made misrepresentations about the Products.

106.   Defendant's misrepresentations regarding the Products are material to a reasonable consumer because they relate to the amount of product the consumer is

-27-

receiving and paying for. A reasonable consumer would attach importance to such representations and would be induced to act thereon in making purchase decisions.

107. At all relevant times when such misrepresentations were made, Defendant knew or had been negligent in not knowing that that the Products did not contain enough ingredients to make the specified number of servings. Defendant had no reasonable grounds for believing its misrepresentations were not false and misleading.

108. Defendant intends that Plaintiff and other consumers rely on these representations, as evidenced by Defendant intentionally and conspicuously placing the misleading representations on the packaging.

109. Plaintiff and members of the Classes have reasonably and justifiably relied on Defendant's negligent misrepresentations when purchasing the Products, and had the correct facts been known, would not have purchased them at the prices at which they were offered.

110. Therefore, as a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## EIGHTH CLAIM FOR RELIEF
### Quasi Contract/Unjust Enrichment/Restitution
### (*for the Classes*)

111. Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

112. Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendant.

113. As alleged herein, Defendant has intentionally and recklessly made misleading representations to Plaintiff and members of the Classes to induce them to

purchase the Products. Plaintiff and members of the Classes have reasonably relied on the misleading representations and have not received all of the benefits promised by Defendant. Plaintiff and members of the Classes therefore have been induced by Defendant's misleading and deceptive representations about the Products, and paid more money to Defendant for the Products than they otherwise would and/or should have paid.

114.   Plaintiff and members of the Classes have conferred a benefit upon Defendant as Defendant has retained monies paid to them by Plaintiff and members of the Classes.

115.   The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes—i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendant.

116.   Therefore, it is inequitable and unjust for Defendant to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefits compared to the value actually received.

117.   As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant from its deceptive, misleading, and unlawful conduct as alleged herein.

## **NINTH CLAIM FOR RELIEF**
**Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.***
**Implied Warranty of Merchantability Under California Law**
(***for the Nationwide Class***)

118.   Plaintiff repeats the allegations contained in paragraphs 1-50 above as if fully set forth herein.

119.   Plaintiff brings this claim individually and on behalf of the proposed Nationwide Class.

-29-

120.   The Products are consumer products within the meaning of 15 U.S.C. § 2301(1).

121.   Plaintiff and Class members are consumers within the meaning of 15 U.S.C. § 2301(3).

122.   Defendant is a supplier and warrantor within the meaning of 15 U.S.C. § 2301(4) and (5).

123.   In connection with the sale of the Products, Defendant issued an "implied warranty" within the meaning of 15 U.S.C. § 2301(7), which warranted that the Products could make a specific number of servings, when in fact the Products do not contain enough ingredients to make the specific number of servings.

124.   By reason of Defendant's breach of implied warranty representing that the Products can make a specific number of servings, Defendant has violated the statutory rights due to Plaintiff and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, thereby damaging Plaintiff and Class members.

125.   Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial, along with attorney's fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class and Subclass, respectfully prays for the following relief:

A.   Certification of this case as a class action on behalf of the Classes defined above, appointment of Plaintiff as Class representative, and appointment of his counsel as Class counsel;

B.   A declaration that Defendant's actions, as described herein, violate the claims described herein;

C.     An award of injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Classes, including, *inter alia*, an order prohibiting Defendant from engaging in the unlawful act described above;

D.     An award to Plaintiff and the proposed Classes of restitution and/or other equitable relief, including, without limitation, restitutionary disgorgement of all profits and unjust enrichment that Defendant obtained from Plaintiff and the proposed Classes as a result of its unlawful, unfair and fraudulent business practices described herein;

E.     An award of all economic, monetary, actual, consequential, and compensatory damages caused by Defendant's conduct;

F.     An award of punitive damages;

G.     An award to Plaintiff and his counsel of reasonable expenses and attorneys' fees;

H.     An award to Plaintiff and the proposed Classes of pre and post-judgment interest, to the extent allowable; and

I.     For such further relief that the Court may deem just and proper.

///
///
///
///
///
///
///
///
///
///
///

-31-

## **DEMAND FOR JURY TRIAL**

Plaintiff, on behalf of himself and the Classes, hereby demands a jury trial with respect to all issues triable of right by jury.

DATED: August 20, 2021                    **THE WAND LAW FIRM, P.C.**

By: /s/ Aubry Wand

Aubry Wand

**CUSTODIO & DUBEY, LLP**

By:    /s/ Robert Abiri

*Attorneys for Plaintiff and the Putative Classes*

-32-